UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DOMINIC CATALDO, et al.,** | ) Case No. 1:09 CV 1253 |
| | ) |
| Plaintiffs, | ) Judge Dan Aaron Polster |
| | ) |
| vs. | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| **UNITED STATES STEEL CORP., et al.,** | ) |
| | ) |
| Defendant. | ) |

Before the Court are the following dispositive motions:

(1) Defendant USW's Motion to Dismiss (**ECF No. 14**), and

(2) Motion to Dismiss All Claims etc. filed by Defendant United States Steel Corp. and/or US Steel & Carnegie Pension Fund (**ECF No. 21**).

For the following reasons, the Motions are **GRANTED**, and the case is dismissed in its entirety.

**I.**

Plaintiffs are 255 individuals who currently, or formerly, worked at the steel mills located in Lorain, Ohio (collectively, "the Lorain Works"). (ECF No. 3 ("Am. Compl.") ¶ 1.) Over the past 21 years, the Lorain Works has changed ownership starting and ending with Defendant U.S. Steel Corporation ("US Steel"). (Id. ¶¶ 2-8.) Despite the change in ownership, Plaintiffs have at all times been represented by one union, Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("the USW" or "the union"). (Id. ¶ 1.)

In 1999, the entity that owned the Lorain Works was Lorain Tubular LLC. (Am. Compl. ¶ 4.) Up to this time, Plaintiffs' pension benefits were determined in the same manner as all US Steel employees. (Id. ¶ 5.) That is, Plaintiffs' pension benefits were calculated based, in part, on a percentage of the total amount of wages they earned during the five years in which they grossed the highest annual income ("best 5 years"). (Id.) Once Lorain Tubular took over, however, a cutoff date of 1999 was established through collective bargaining, effectively freezing the amount of pension benefits a retiree could receive by limiting the range of the "best 5 years" to only those years up to and including 1999. (Id. ¶ 6.) Thus, the income a retiree received after 1999 could not be incorporated into the "best 5 years" formula. (Id.)

In 2001, Lorain Tubular merged into US Steel, Plaintiffs against became US Steel employees, and they were informed that the USSCPF would be managing their pension plan. (Am. Compl. ¶ 7.) Plaintiffs "were hopeful, in light of promises" that they would be treated the same as all US Steel employees. (Id. ¶ 8.) "Yet, in mid-2003, Plaintiffs were informed that their pension benefits would remain 'frozen.' " (Id. ¶ 9.)

In 2003, US Steel offered its employees an early retirement program, the USS Transition Assistance Program for USWA Represented Employees (otherwise known as "TAP" or "the TAP Plan"). (Am. Compl. ¶ 8.) "In addition to receiving a lump sum payment, T.A.P. retirees would be entitled to a significantly more favorable pension calculation." (Id.) Because it was unclear whether Lorain Works employees who took advantage of the TAP would receive the same benefits as the non-Lorain Works employees, "numerous Plaintiffs sought assurances that they would receive the same T.A.P. benefits as all other [US Steel] employees. They were promised that they would." (Id. ¶ 9.) In reliance on these promises, a number of the Plaintiffs

-2-

took early retirement under the TAP Plan. (Id. ¶ 10.) They quickly discovered that they would receive significantly less pension benefits than promised. (Id.) "Many protested, to no avail, and continue to receive reduced benefits to this day." (Id.)

Meanwhile, Plaintiffs who retired after 2003 continue to receive pension benefits based on the frozen "best 5 years" formula. (Am. Compl. ¶ 11.) Plaintiffs currently working have persistently made oral and written inquiries as to what benefits they will receive upon retirement, how their benefits will be calculated, whether and when their calculation will be restored, and assurances that there is adequate capital in the Pension Funds to ensure Proper benefits upon retirement." (Id.) "Yet, they consistently receive incorrect benefit determinations and vague and inadequate responses." (Id. ¶ 11.)

Based on these allegations, Plaintiffs filed the instant case on June 1, 2009 against every corporation that has owned the Lorain Works facilities since 1989, two pension funds, the Pension Benefit Guaranty Corporation ("PBGC") and the USW. Plaintiffs, all of whom worked at the Lorain Works, are divided into three groups: active employees, TAP retirees, and all other retirees. Plaintiffs assert the following claims against all Defendants: ERISA breach of fiduciary duty (Count One); accounting, restitution and other equitable relief under ERISA (Count Two); ERISA estoppel (Count Three); ERISA action to compel plan administrators to provide plan documents (Count Four); fraud (Count Five); negligence (Count Six); breach of fiduciary duty (Count Seven); and promissory estoppel (Count Eight).

The record reflects that the only named Defendants who have been served are the moving Defendants (i.e., the USW, US Steel and US Steel Carnegie Pension Fund ("the USSCPF")), along with Defendants Kobe Steel USA Holdings, Inc., Kobe Delaware, Inc. and the PBGC.

Plaintiffs have dismissed Defendants Kobe Steel USA Holdings, Inc., Kobe Delaware, Inc. and the PBGC. (See ECF Nos. 41, 42, 46, 47.) The remaining served Defendants (again, the USW, US Steel and the USSCPF) have filed the pending motions to dismiss. (Respectively, ECF Nos. 14 and 21.) Plaintiffs have filed opposition briefs to those motions (ECF Nos. 18, 35), Defendants have filed reply briefs (ECF Nos. 20, 43), and Plaintiffs have filed a surreply (ECF No. 34). The Court has reviewed the motions, the briefs and certain of the attachments and is prepared to issue its ruling.

## II.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. "The first step in testing the sufficiency of the complaint is to identify any conclusory allegations." *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009) (citing *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)). 550 U.S. 544, 555 (2009)). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 120 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Simpson*, 2009 WL 2591682, at *1 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 550). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. More is required than "unadorned, the-defendant-unlawfully-harmed me accusations." *Id*.

**A.     Count One**

Defendants US Steel and USSCPF seek to dismiss the breach of fiduciary duty claim asserted in Count One on the basis, among other things, that the claim is time barred. Defendant USW seeks to dismiss this claim on the basis that the union is not an ERISA fiduciary. The Court will address these questions in turn.

With regard to the statute of limitations, the parties agree on the applicable ERISA standard. A party asserting a breach of fiduciary duty claim under ERISA normally has six years from the date of the alleged breach to file suit. 29 U.S.C. § 1113(1). However, a plaintiff who has "actual knowledge" of the breach must bring the claim within three years. 29 U.S.C. § 1113(2); *see also Wright v. Heyne*, 349 F.3d 321, 327 (6th Cir. 2003). A plaintiff has "actual knowledge" of the breach when he has knowledge of the underlying conduct giving rise to the breach, rather than knowledge that the underlying conduct violates ERISA. *Wright*, 349 F.3d at 330-31; *see also Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519-520 (6th Cir. 2008).

According to the Amended Complaint, Plaintiffs had actual knowledge of the facts underlying this claim in 1999 when their pension formula was frozen. They were reminded that their pension formula remained frozen in 2003. The TAP Plaintiffs had actual knowledge that they were not going to receive the benefits they were allegedly promised in 2003 when they started to receive their benefits. Given these alleged facts, Plaintiffs had three years (until 2006) to file a breach of fiduciary duty claim. They did not file this claim until June 2009. Accordingly, the claim is barred by the three-year statute of limitations.

Plaintiffs argue that the limitations statute should be extended or equitably tolled because Defendants fraudulently concealed these facts from them. However, based on the allegations in the Amended Complaint, they knew these facts giving rise to their claim in 2003. Accordingly, there is no basis upon which to equitably toll the limitations period.

The USW seeks dismissal of this claim on the basis that it is not an ERISA fiduciary under the Plan. The Court agrees.

Section 1132(a)(3) of ERISA permits an individual plan participant or beneficiary to bring a private cause of action for breach of fiduciary duty for "appropriate and equitable relief." *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489 (1996); *Allinder v. Inter-City Prod. Corp.*, 152. F.3d 544, 551 (6th Cir. 1998). Therefore, a plaintiff can properly bring an action for breach of fiduciary duty pursuant to § 1132(a)(3) against a person that qualifies as a "fiduciary" under ERISA. *Burklow v. Local 215 Int'l Bhd. of Teamsters*, No. 4:02CV-32-M, 2008 WL 3243999, at *3 (W.D. Ky. Aug. 6, 2008).

Section 1102 of ERISA provides that every employee benefit plan shall be established and maintained pursuant to a written instrument, and that every instrument shall provide for one or more named fiduciaries who shall have authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). Under ERISA, a plan "fiduciary" not only includes persons specifically named as fiduciaries in the plan, but anyone else who exercises discretionary control or authority over a plan's management, administration or assets. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (citing 29 U.S.C. §(21)(A))[1]; *Voyk v.*

---

[1]Under 29 U.S.C. § 1002(21)(a):

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such

-6-

*Bhd. of Locomotive Engineers*, 198 F.3d 599, 605 (6th Cir. 1999) (employer was not an ERISA fiduciary where it was neither a named fiduciary nor the plan administrator, and it had no authority to interpret or administer the plan).

The subject plan specifically places responsibility for administration of the plan in US Steel; and US Steel specifically delegates its administrative authority over the plan to the USSCPF.[2] (ECF No. 20-3, at 21 ¶ 10.1.) Plaintiffs have not alleged that the union is also named as a fiduciary in the plan documents or that the union has rendered investment advice for a fee. Thus the union can only be a fiduciary if it exercises discretionary authority or control over the plan's management or administration.

Plaintiffs argue that it is enough to survive a motion to dismiss to simply allege, as they have in the Amended Complaint, that "the Defendants-Plans, Defendants-Employers, and/or Defendant USW Union . . . had discretionary authority, responsibility, and/or control over the management and implementation of the Pension Plans." (Am. Compl. ¶ 46.) However, the law is now clear. "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 120 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. The court is not bound to accept as true a legal conclusion couched as a factual allegation. *Simpson*, 2009 WL 2591682, at *1; *Twombly*, 550 U.S. at 555.

---

plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such terms includes any person designated under section 1105(c)(1)(B) of this title.

[2]In ruling on a motion to dismiss, the Court may consider documents that were not attached to the complaint if they are referred to in the complaint and are central to the plaintiff's claim. *Greenbert v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

The only allegation that arguably implicates the union is the allegation that the union misled or misinformed Plaintiffs about what their pension benefits would be under the TAP plan.[3] This is conduct normally engaged in by unions during the collective bargaining process. Courts have uniformly held that a union is not a plan fiduciary when its role is limited to negotiating the plan and representing employees on claims for benefits. *Grindstaff v. Green*, 133 F.3d 416, 425 (6th Cir. 1998); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101-03 (9th Cir. 2004); *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1268 (7th Cir. 1985) ("a union is not a fiduciary while, or merely because, it is negotiating the terms and conditions of future pension benefits."); *Rosen v. Hotel & Rest. Employees Union Local 274*, 637 F.2d 592, 599 n.10 (3rd Cir. 1981); *Burklow*, 2008 WL 3243999, at *6. To the extent that Plaintiffs are complaining that the union should have negotiated better terms for them in 1999 or 2003, that would be the subject of a different claim that has not been asserted in their complaint.

Even if this Court were to conclude, based on these allegations, that the USW is a fiduciary under the subject plan, the Court would still dismiss the claim against the union because, as previously determined, it is barred by the three-year statute of limitations.

**B.  Count Two**

Count Two of the Amended Complaint seeks an accounting, restitution and other equitable relief due to Defendants' alleged misrepresentations, improper administration and management of the pension plan based, presumably, on the implementation of the TAP program

---

[3]Plaintiffs cannot assert a claim for breach of fiduciary duty over the fact that they were informed in 2003 that their pension formula remained frozen using their pre-2000 best 5 years' income because the Amended Complaint makes clear that this is in fact the truth.

and the failure to unfreeze the pension-benefit formula in 2003. Because this Count is derivative of the breach of fiduciary duty claim which has just been dismissed, Count Two is dismissed as well.

**C.     Count Three**

Defendants seek dismissal of Plaintiffs' ERISA estoppel claim. Count Three of the Amended Complaint alleges that Defendant employers, plans and union knowingly misled the Plaintiffs, made material misrepresentations and false promises to them regarding their pension benefits – and that Plaintiffs reasonably relied on those misrepresentations and false promises to their detriment. (Am Compl. ¶¶ 81-82.)   Defendants correctly argue that the Sixth Circuit has not recognized an estoppel claim in the context of a pension plan, and has limited such claim to cases involving welfare plans, citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299-1300 (6th Cir. 1991) (permitting limited application of estoppel principles to ERISA welfare benefit plans, but expressing no opinion as to the application of estoppel principles to ERISA pension plans); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (recognizing the viability of estoppel claims, but limiting its holding to ERISA welfare plans); *Bielkie v. Gen. Motors Corp.*, No. 98-1873, 1999 WL 644336, at *2 (6th Cir. Aug. 19, 1999) (clarifying that *Sprague* is limited to welfare plans); *Soper v. Infusion Partners, Inc.*, No. 1:07cv645, 2009 WL 237313, at *5 (S.D. Ohio 2009) (holding that estoppel claim is improper where a pension plan and actuarial concerns are at issue); *Steadman v. Bd. of Trustees of Building Material Drivers Local 436 Pension Fund Plan*, 2006 WL 305311, at *9 (N.D. Ohio 2006) (holding that estoppel theory is unavailable in an action concerning an ERISA pension plan). Defendants also argue that, even if the Sixth Circuit did recognize a claim for estoppel in the pension plan context, it

would fail in any event because principles of estoppel cannot be applied to vary the terms of unambiguous plan documents. (ECF No. 21-1 at 17 (citing *Sprague*, 133 F.3d at 403 and *Bielkie*, 1999 WL 644336, at *7.)) Because the plan documents attached to Defendants' motion are unambiguous, estoppel does not apply.

Plaintiffs ignore Defendants' legal argument that the Sixth Circuit does not recognize estoppel claims in the pension plan context, and argue only that they cannot determine whether or not the plan is ambiguous because they don't have access to the pension plan documents.

Plaintiffs' ERISA estoppel claim fails as a matter of law because it is clear in the Sixth Circuit that, while the doctrine of equitable estoppel may apply to ERISA welfare plans, it does not apply to ERISA pension plans due to concerns that modifications to those plans, which are based on actuarial calculations, could undermine the security of those plans. *Thomas v. Miller*, 489 F.3d 293, 297-98 (6th Cir. 2007); *Armistead*, 944 F.2d at 1299-1300; *Sprague v. Gen. Motors Corp.*, 133 F.3d at 404; *Bielkie*, 1999 WL 644336, at *2; *Soper*, 2009 WL 237313, at *5; *Steadman*, 2006 WL 305311, at *9.

**D.    Count Four**

In Count Four of the Amended Complaint, Plaintiffs ask the Court to compel Defendant US Steel Carnegie Pension Fund, the Plan Administratorm to provide the Plan documents. Plaintiffs assert:

> On or about March 11, 2009, the Plaintiffs sent written requests to all of the Defendants for several Plan and Fund-related Documents including, but not limited to, Summary annual reports, Summary Plan descriptions, Form 5500s, Trust Agreement, Rules and Regulations of the Pension Fund, individual Participant benefit calculations, and 204(h) notices. However, as of the date this complaint was filed, each Defendant has either failed to respond or provided inadequate responses to those requests.

>The Defendants' failure to respond within a 30 day period is a violation of ERISA.

(ECF No. 3 ¶¶ 85.-86.)

Under 29 U.S.C. § 1024(b)(4), "the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The phrase "other instruments under which the plan is established or operated" has been held to be "clear and unambiguous" and to encompass "only formal or legal documents under which a plan is set up or managed." *Faircloth v. Lundy Packing Co.*, 91 F.3d 649, 654 (4th Cir. 1996). Defendants argue that this Count should be dismissed because Defendant USSCPF provided, on May 1, 2009, all documents required under § 1024(b)(4). They attached to their Motion the letters exchanged between counsel reflecting Plaintiffs' request for documents and the USSCPF's response. (ECF Nos. 21-2, 21-3.) Plaintiffs argue only that Defendants' contention that they provided all required documents relies on matters beyond the complaint, and this exchange between counsel does not fall within the exception to consideration of documents beyond the complaint in a motion to dismiss.

The record reflects that Plaintiffs sent a letter to Defendants dated March 26, 2009 requesting numerous Plan and other documents dating back to January 1, 1969. (ECF No. 21-2, at 1-3.) The record also reflects that, on May 1, 2009, Defendant USSCPF responded to that request by providing the documents required to be provided under § 1024(b)(4) along with some other documents . (ECF No. 21-3, at 1-4.) The USSCPF noted that § 1024(b)(4) does not entitle participants to copies of all regulatory filings and other documents that may have been provided

-11-

to the PBGC, the U.S. Department of Labor, the IRS, or other governmental agency; that Plaintiffs' request for all minutes, notes and reports of all meetings of the Board of Trustees and negotiating committees dating back to January 1, 1969 was overly broad; and that such minutes, notes and reports generally do not include documents under which the Plan was established or operated. The USSCPF asked that, if Plaintiffs' attorneys believed that their clients were entitled to receive additional documents, they send a written request clearly describing such documents. Defendants report that Plaintiffs have made no further requests. (ECF No. 21-1, at 12.) Again, Plaintiffs do not deny or dispute that they were provided the required documents by the USSCPF; rather, they contend only that the USSCPF's response cannot be considered in a motion to dismiss because it was not mentioned directly or indirectly in the complaint. Defendants point out that, to the contrary, the Amended Complaint directly references the USSCPF's responses. Therefore, its response should properly be considered by the Court in analyzing the motion to dismiss.

> In *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997), the Sixth Circuit explained:
>
> [A] plaintiff is under no obligation to attach to his complaint documents upon which his action is based. However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss by simply failing to attach a dispositive document upon which it relied.

*Id*. at 89. Plaintiffs appear to be trying to "survive a motion to dismiss by simply failing to attach a dispositive document" – the USSCPF's response. What makes this matter worse is that the Amended Complaint was filed on June 3, 2009 – more than a month after the USSCPF responded to Plaintiffs' request. Because the USSCPF responded to Plaintiffs' request, Count Four is hereby dismissed.

**E.     Counts Five through Eight**

Defendants argue that the Court should dismiss the state law claims asserted in Counts Five through Eight because, as a matter of law, they are preempted by ERISA. Plaintiffs counter that not all state law claims are preempted by ERISA and their state law claims exist "only if" the claims do not relate to the pension plan, any Defendant is not a fiduciary, and ERISA does not apply complete relief against any of the Defendants.

Under 29 U.S.C. § 1144(a), the ERISA framework "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The phrase "relate to any employee benefit plan" is given broad meaning such that a state law cause of action is preempted if "it has connection with or reference to such a plan." *Shaw v. Delta Airlines Inc.*, 463 U.S. 85, 96-97 (1983). Congress' intent in enacting ERISA was to preempt completely the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Nevertheless, some state laws might affect ERISA plans in a way that is "too tenuous, remote, or peripheral" to say that they "relate to" the plan. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007) (quoting *Shaw*, 463 U.S. at 100 n.21). "Congress did not intend . . . for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.' " *Id*. (quoting *LeBlanc v. Cahill*, 153 F.3d 134,

-13-

147 (4th Cir. 1998)). However, where resolution of the state law claim "necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Id.* (quoting *Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005).

Plaintiffs cite *Thurman* in support of their position that their state law claims are not preempted by ERISA. In *Thurman*, however, the Sixth Circuit found that a doctor's fraudulent misrepresentation claim against his employer (Pfizer) was not preempted by ERISA because he was only a prospective employee (and not a plan participant) when Pfizer made alleged misrepresentations to him about his future pension benefits in order to induce him to leave his former employment. That case is distinguishable from this one where Plaintiffs have at all relevant times been plan participants who are complaining about Defendants' misrepresentations to them about their pension benefits.

The Court finds that all the state law claims (fraud, negligence, breach of fiduciary duty and estoppel) are claims implicating the relations among the principals, the employer, the plan fiduciaries, and the plan participants, which claims require evaluation of the plan and the parties' performance pursuant to it. It is not enough for Plaintiffs to argue that these claims exist only to the extent that they do not relate to the plan because <u>they all relate to the plan</u>. The breach of fiduciary duty and estoppel claims are obviously preempted by the ERISA fiduciary duty and estoppel claims. Because the fraud claim makes the same assertions regarding Defendants' misrepresentation of the plan as the ERISA breach of fiduciary duty claim, it is preempted. The negligence claim merely alleges that Defendants "owed the Plaintiffs a duty of care and breached that duty." (ECF No. 3 ¶ 97.) Any duty Defendants owed Plaintiffs based on the allegations in

-14-

the Amended Complaint arise solely from the plan.  Accordingly, the negligence claim is preempted as well.

The fact that the Court has concluded that the USW is not a plan fiduciary does not affect the preemption analysis.  *Burklow*, 2008 WL 3243999, at *7.  State law claims asserted by plan participants against nonfiduciaries are preempted by ERISA as well.  *Id*. (citing *Smith v. Provident Bank*, 170 F.3d 609, 615-16 (6th Cir. 1999), in turn citing *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410. 418-19 (4th Cir. 1993)).

### III.

For the aforementioned reasons, the Court **GRANTS** the motions to dismiss of Defendants USW, US Steel and the USSCPF (**ECF Nos. 14, 21**) and dismisses all claims against them.  Because the same analysis applies to the claims against all named defendants (i.e., the various interim employers and pension funds that have not been served), however, the Court dismisses the case in its entirety.

**IT IS SO ORDERED.**

                                        */s/ Dan Aaron Polster       March 25, 2010*
                                        **Dan Aaron Polster**
                                        **United States District Judge**